2010 Ark. 169

**Teresa BLOODMAN, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. 09–657.**

Supreme Court of Arkansas.

April 15, 2010.

Teresa Bloodman, Maumelle, pro se.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, attorney Teresa Bloodman, appeals the order of the Mississippi County Circuit Court fining her $1,500 and holding her in contempt for obtaining the court's signature on an amended judgment and commitment order by misrepresenting the State's consent thereto. Jurisdiction is properly in this court pursuant to Ark. Sup.Ct. R. 1–2(a)(5) (2009), as an appeal involving the discipline of attorneys-at-law and the regulation of the practice of law. On appeal, Bloodman asserts that the circuit court erred in holding her in criminal contempt without notice and opportunity to be heard and that there was insufficient evidence to support the finding of contempt. We find merit to the first argument and therefore reverse and remand.

The facts giving rise to the finding of contempt occurred during Bloodman's representation of Jonathan Laprese Stevenson in postconviction proceedings following his conviction for rape in Mississippi County on December 6, 2007. During her postconviction representation of Stevenson, Bloodman filed on September 16, 2008, a motion to amend the judgment and commitment order to reflect the range of dates on which Stevenson committed the rape, to reflect that the sentence was a departure from the sentencing grid, and to clarify the requirement of restitution by indicating the amount and time for payments. The motion contained a statement that "[t]he Prosecuting Attorney had been advised by letter and telephonic communication of the need to correct the Judgment and Commitment Order." The motion also contained a certificate of service in which Bloodman certified that the deputy prosecuting attorney, Catherine Dean, had been served with a copy of the motion by facsimile and regular mail. After a series of events that were the subject of an inquiry hearing below that led to the finding of contempt currently on appeal, the circuit court granted the motion and entered an amended judgment and commitment order on November 12, 2008.[1]

---

1. In December 2008, Bloodman filed a motion for rule on clerk on behalf of Stevenson, which this court treated as a motion for belated appeal and granted based on Bloodman's failure to timely file a notice of appeal. *Stevenson v. State*, 375 Ark. 318, 290 S.W.3d 5 (2008) (per curiam). In that per curiam, this court observed that an amended judgment

Thereafter, Dean wrote a letter to the circuit court dated February 3, 2009, in which she informed the court that it had come to her attention "quite accidentally" that the judgment and commitment order in the *Stevenson* case "had been amended without any notice to or opportunity to be heard by the State," and that the original judgment and commitment order was no longer in the court file. The deputy prosecutor's letter stated that although Stevenson had filed a motion to amend the judgment and certified that a copy had been served upon the prosecutor, the prosecutor's office had never received a copy of the motion. The deputy prosecutor closed her letter by stating that she "would appreciate [the court] looking into this matter."

By letter addressed to both Dean and Bloodman dated February 5, 2009, the court responded to Dean's letter, stating that the court had a vague recollection of Bloodman bringing the amended judgment and commitment order in chambers and that the court had the impression that the State was in agreement, but that the court's memory was far from perfect on the matter. Accordingly, the court proposed "to have a hearing to determine precisely what happened as soon as practicable." The court proposed three dates for the hearing, and instructed the two attorneys to "discuss it and decide which of these three days works best for your schedules. Unless I hear otherwise, I intend to hear it on February 18[, 2009]."

Bloodman responded by letter to Dean dated February 11, 2009, expressing Bloodman's scheduling conflicts and attaching copies of correspondence from various courts confirming such conflicts. This letter also advised that Bloodman would be out of state on February 15–18, 2009, due to the death of a family member. Bloodman then wrote the court on February 13, 2009, objecting to the hearing and explaining that "[a]ny hearing would pose a significant burden or conflict" unless it was scheduled beyond the next thirty days. In addition, Bloodman requested that the court identify the authority under which the hearing would be convened, the issues to be addressed, and any potential exhibits and witnesses.

The circuit court held the hearing on February 18, 2009. Dean appeared and Bloodman did not. Dean testified that back in September 2008, her office had received a letter from Bloodman requesting Dean's agreement to amend the judgment and commitment order. Dean recalled that she did not agree to the amendments at that time. Dean stated that Bloodman approached her one other time during a plea and arraignment day requesting her consent to an amended judgment and commitment order and that she did not agree then either. Dean stated further that she "never heard another word" about it until she just happened to run across this court's ruling on the belated appeal, which indicated an amended judgment and commitment order had been filed. Dean stated that it was at that point that she checked the court's file and discovered that the amended judgment had been filed and the original judgment was missing. She also discovered in the file that a motion to amend the judgment

and commitment order was entered on November 12, 2008, and that on November 18, 2008, Stevenson, through Bloodman, filed a notice of appeal from that amended judgment. However, this court found the November 18, 2008 notice of appeal to be a nullity because the record did not reflect that a post-trial motion to amend the judgment had been timely filed within thirty days of the entry of the original judgment and commitment order. *Id.* The Arkansas Court of Appeals affirmed Stevenson's conviction in September 2009. *Stevenson v. State*, 2009 Ark.App. 582, 2009 WL 2877238.

had indeed been filed certifying that the prosecutor's office had been served. Dean stated that her office had never received a copy of the motion to amend. Dean also stated that after she was contacted by the court's case coordinator and advised that the hearing would go forward on February 18, she attempted to communicate this to Bloodman by faxing a letter, but Bloodman's fax machine line was busy for several hours. Finally, Dean stated that she communicated the hearing date to Bloodman via email.

The circuit court then noted that it had received Bloodman's letter objecting to the hearing but that she had neither requested a continuance nor articulated any reason why a continuance should be granted, thus the hearing would continue despite her choice not to appear. The circuit court then made a finding that Bloodman had obtained the court's signature on the amended judgment and commitment order by misrepresenting the State's approval and consent. It was on that basis that the circuit court entered an order fining Bloodman $1,500 and holding her in contempt. This appeal followed.

As her first point on appeal, Bloodman contends that she was deprived of her due-process rights under the Arkansas and United States Constitutions when she was summarily held in criminal contempt of court without receiving notice that criminal contempt charges were pending and an opportunity to present a defense.[2] She relies on *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988), and Ark.Code Ann. § 16–10–108 (Supp.2009). The State responds that the court's letter of February 5, 2009, was adequate notice to Bloodman

that a hearing would be held on February 18, 2009, to address her procurement of the court's signature on the amended order by misrepresentation, an act which the State describes as "unarguably contemptuous." The State responds further that Bloodman cannot say she was denied due process because she was given an opportunity to be present at the hearing but chose not to attend.

The threshold issue in a contempt case is whether the proceeding was a criminal or a civil proceeding. *Fitzhugh*, 296 Ark. 137, 752 S.W.2d 275. The critical features that determine the nature of the proceeding are (1) the substance of the proceeding and (2) the character of the relief. *Id.* In *Fitzhugh*, this court explained the difference as follows, quoting in part from the United States Supreme Court:

> The purpose of a criminal contempt proceeding is that it is brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. A civil contempt proceeding is instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of those parties. *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974); *see also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 [31 S.Ct. 492, 55 L.Ed. 797] (1911). However, the substantive difference between civil and criminal contempt often becomes blurred. The character of the relief, rather than the trial court's characterization of the substantive proceeding, becomes the critical

---

**2.** Bloodman includes in her argument a citation to *Hilton Hilltop, Inc. v. Riviere*, 268 Ark. 532, 597 S.W.2d 596 (1980), for the proposition that she is entitled not only to notice but also to service of legal process because she was not a party to the action or otherwise

before the court. While Bloodman was not a party in the *Stevenson* case and was not present at the February 18 hearing, she was otherwise before the court as counsel for Stevenson and an officer of the court.

factor in determining the nature of the proceeding for due process purposes. The Supreme Court of the United States has clearly set out the distinction between the types of relief:

"If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 [31 S.Ct. 492, 55 L.Ed. 797] (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442 [31 S.Ct. 492]. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

. . . .

The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Penfield Co. v. SEC*, 330 U.S. 585, 593 [67 S.Ct. 918, 91 L.Ed. 1117] (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.'" *Id.* at 590 [67 S.Ct. 918], quoting *In re Nevitt*, 117 F. 448, 461 (C.A.8 1902).

*Id.* at 138–40, 752 S.W.2d at 276–77 (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631–33, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)). In the present case, the $1,500 fine assessed against Bloodman is unconditional and is to be paid to the court. Without question, as was the case in *Fitzhugh*, Bloodman's fine is punitive in nature as it has no coercive or compensatory aspect.

■ As this court observed further in *Fitzhugh*, "[t]hese distinctions between civil and criminal contempt lead up to the fundamental proposition that criminal penalties may not be imposed on an alleged contemner who has not been afforded the protections that the Constitution requires of criminal proceedings." *Id.* at 140, 752 S.W.2d at 277. The Due Process Clause, as applied in criminal proceedings, requires that an alleged contemner be notified that a charge of contempt is pending against him and be informed of the specific nature of the charge. *Id.*

■ We agree with the State that the court's letter of February 5, 2009, provided adequate notice to Bloodman that a hearing "to determine precisely what happened" would occur on February 18, 2009. We also agree with the State that, as the court found at the hearing, Bloodman chose not to attend the hearing. We cannot agree, however, that the court's letter gave Bloodman adequate notice that criminal contempt charges were pending against her. The court's letter does not mention that it was considering contempt or any other consequence as a result of its inquiry hearing. Thus, while we agree that the court's letter gave Bloodman no-

tice that an inquiry or an investigatory hearing would be held, the letter did not inform Bloodman that the consequences resulting at the conclusion of the court's investigation included the possibility of a finding of criminal contempt. *See Bartley v. State,* 73 Ark.App. 452, 45 S.W.3d 387 (2001) (reversing and remanding where notice did not inform that consequence of noncompliance was contempt).

In addition to the due-process requirements we have previously recited from the *Fitzhugh* case, we are cognizant of Arkansas statutory law on the requirements of notice for criminal contempt. Section 16–10–108(c) provides that contempts committed in the immediate view and presence of the court may be punished summarily, and in other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his defense. Thus, both Arkansas law and the Fourteenth Amendment to the United States Constitution are clear that Bloodman was entitled to notice not only that the court was investigating the possibility of her misrepresentation to the court, but also that it was considering holding her in criminal contempt for such alleged misrepresentation. We therefore reverse and remand on this point.

As her second point on appeal, Bloodman challenges the sufficiency of the evidence to support the finding of contempt. As we reverse and remand for lack of notice, we need not address this point.

The order holding Bloodman in criminal contempt of court is reversed, and the case is remanded.

BROWN, J., concurs.

BROWN, J., concurring.

I write simply to add that due to the nature of this proceeding and the unique circumstances that gave rise to it, the cir-

cuit judge may wish to consider recusal if this matter is pursued any further. *See Rash v. Huffman,* 339 Ark. 62, 2 S.W.3d 71 (1999).