Cite as 2026 Ark. App. 99

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-25-299

| | |
|---|---|
| ZOE JACKSON<br><br>APPELLANT<br><br><br>V.<br><br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 18, 2026<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-24-710]<br><br><br>HONORABLE BRENT HALTOM, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Zoe Jackson appeals the Miller County Circuit Court order holding her in criminal contempt. On appeal, Jackson argues that the circuit court erred by depriving her of due process and by imposing a summary punishment. We affirm.

Zoe Jackson is a licensed attorney in Arkansas, and she represented Demon Richardson in a criminal proceeding in Miller County.[1] On December 3, 2024, the circuit court set Richardson's trial for March 24, 2025.

On March 21, 2025, Jackson moved to continue Richardson's pretrial hearing, stating that she was in the process of interviewing essential witnesses. On the same day it was filed,

---

[1]The State had charged Richardson with second-degree unlawful discharge of a firearm in a vehicle and three counts of aggravated assault.

the circuit court entered an order denying the motion for "stating incorrect facts and for being untimely." The court noted that the case was set for a jury trial, not a pretrial hearing, and that the motion had been filed on a Friday afternoon.

On March 24 at 10:20 a.m., Jackson filed another motion to continue. She alleged that she "just received discovery in its entirety" on March 19 and that she was set to appear in another case in Drew County that afternoon.

At 10:47 a.m., the parties appeared before the court.[2] Jackson asked the court to grant a continuance because the State had just provided new discovery items that included photos, a police report, and body-cam footage. The State responded that on March 19, it provided Jackson with six "pictures of dirt" because the State did not have them in the case file. However, the State asserted that it provided Jackson with discovery on December 6, 2024, and that Jackson opened the electronic file on December 10, 2024.

Jackson then raised an issue concerning her client's bond. She stated that the court had denied her client's bond even though the bond had been approved by the State. The court responded that Jackson failed to submit the correct signatures. Jackson eventually conceded error but asked for a special hearing on the bond issue.

The court returned to the continuance motion and again denied it, noting that Jackson had not established a discovery violation. Jackson stated, "Your Honor, if I need to contact the Judicial Committee so that we can . . . ."  The court advised Jackson, "Don't

_____

[2]The court explained that "the Clerk advised me this morning that at 10:20 today you filed another motion for a continuance."

threaten this Court." Jackson replied, "It is not a threat." She then stated, "And I will not be here at one o'clock, because my client and I will not be prepared for a jury trial on evidence we have not received from the State."

The court responded that Jackson had not explained how the discovery issue prejudiced her client. Jackson again asserted that on March 19, the State provided her with supplemental reports, body-cam footage, and photos from the scene, and she had not reviewed them. The State replied that it had sent the body-cam footage on December 4, and it also explained that it did not plan to introduce the photos. The State additionally noted that the police report is only two or three paragraphs.

The court concluded that the "discovery issue is not going to be a reason for the continuance." The court asked Jackson about her hearing in Drew County and whether she had the applicable court documents. The court also stated, "[I]f I need to call that judge, then that i[s] what I will do." Jackson responded, "Whatever you need to do, Your Honor. May we please be excused[?]" Jackson stated that she would provide the court with the documentation from Drew County but that "Judge Brown expects me to be in Drew County at 2:30 p.m."

The court stated, "I am expecting you to be here at one o'clock to try this case. And if you're not, then we will do on the record what happens if you're not here." Jackson responded, "Understood," and again asked to be excused.

The court again stated, "[T]his case is denied for continuance." Jackson then confirmed that the record included the discovery issue, and the court replied that it would file a written order denying the continuance.

Jackson stated, "I will not be here so you guys might go ahead and draft up your paperwork. Y'all have a great rest of your day. And, Mr. Richardson, you please have a great rest of your day. May I please be excused, Your Honor?" The court warned Jackson that if she did not appear, the court would "have no choice but to hold [her] in contempt of court." Jackson replied, "Understood." The court adjourned.

At 1:04 p.m., Jackson filed another motion to continue and for a new judge to be assigned to the case. She again asserted that she "just received discovery in its entirety on March 19, 2025," and she claimed that two files were unopenable. She acknowledged that the State had provided her paper discovery on December 6, 2024, a record from a Texas case on March 6, 2025, and five photographs on March 5. She argued, however, that she was unprepared for trial and needed to review the additional discovery, and she asserted that the court denied her continuance requests without basis. She claimed that the circuit court judge disregarded her client's constitutional rights by denying her continuance requests, and she asked Judge Haltom to voluntarily remove himself from the case.

At 1:24 p.m., the court reconvened for Richardson's jury trial, but Jackson did not appear. The court thus dismissed the jury. The State then asked the court to hold Jackson in contempt for failing to appear, to approve a warrant for obstructing governmental operations, and to order her to reimburse the county $1,515 for the jury fees. The court held

4

Jackson in contempt, and the court noted that Jackson "willfully told the Court she wasn't going to be here." The court stated that it would file a written order.

At 2:20 p.m., Jackson filed a motion for recusal and request for transcripts. She again claimed that the court's denial of her request for a continuance violated her client's constitutional rights. She further asserted that she did not feel safe or secure appearing before the court due to Judge Haltom's "egregious behavior" during her appearances. She asked for an evidentiary hearing and for transcripts of all proceedings regarding her client.

At 3:24, the court entered an order holding Jackson in contempt, and it ordered the sheriff to arrest and hold her to appear before the court to face punishment for the contempt. It also ordered her to pay $1,515, which represented the county's expenses for 101 people who appeared for jury duty.

On March 25, the court entered an order declining to recuse from the case, and it denied exhibiting the behavior alleged by Jackson. The court further noted that Jackson could request transcripts from the court reporter with proper notice and payment.

Also on March 25, the court entered an order on Jackson's motion to continue and for a new judge to be assigned. The court noted that it had already denied Jackson's continuance requests because the State's discovery from March 19 did not impair her trial preparations. The court also found that "[n]othing in this [m]otion is a basis for the [c]ourt's recusal." The court continued Richardson's case to April 8, and it noted that the contempt proceedings are continuing.

On March 26, the court held a special hearing for Jackson's contempt punishment. Jackson had surrendered herself that morning, and she appeared with counsel. The State had also charged her with obstruction of justice in district court.

Jackson's counsel requested a jury trial. He also argued that Jackson did not appear for the jury trial on March 24 because she had a conflict in Lincoln County, and she could not appear for both at the same time. He further sought to challenge the court's contempt finding on whether Jackson's actions were willful due to the Lincoln County conflict.

The court responded that Jackson had represented to the court that she had a hearing in Drew County but never provided documentation of that hearing. The court also stated, "And the Court took it upon himself to look at Drew County to see if there was anybody that I could talk to. And of course, there was no court proceedings going on in Drew County." The court also stated it had already made a contempt finding and that the hearing concerned only punishment.

Jackson then testified on her own behalf. She stated that she received her Arkansas Bar license in 2022 and that her office is in Pine Bluff. She explained that she has a solo practice and that she also serves on the public defender's commission as parent counsel. She testified that she had multiple upcoming court appearances, including eight cases scheduled for the following day in Pine Bluff. She also stated that she had a criminal jury trial set on Friday "that cannot be continued" and that she is at the courthouse every day of the week. Jackson tendered a money order for $1,550 to the circuit clerk.

During cross-examination by the State, Jackson stated that when she left the Miller County Courthouse on March 24, she tried to attend court in Lincoln County, but she was late. She explained that the Lincoln County Circuit Court allowed her to participate by Zoom.

Jackson then made the following statement to the court:

> Your Honor, I would like to apologize first of all, for disrespecting this Court. That was not my intention. And, secondly, I would like to remind you that regardless of my punishment today, I would like to remind you that I have clients that I need to think about. If I'm not present for them, no one else is going to be present. These are paying clients that I need to be there for. So, I just ask that you please consider them. Thank you.

The court thereafter sentenced Jackson to incarceration from the time of booking through March 31 at 9:00 a.m. The court entered a written order the same day.

On March 27, Jackson moved the court to reconsider her punishment for contempt. She argued that the court violated her due-process rights when it did not provide her with a hearing to challenge the contempt finding. She further argued that the circuit court could not summarily impose imprisonment because her contempt occurred outside the presence of the court. On March 31, the court denied Jackson's motion to reconsider, and on April 22, Jackson filed her notice of appeal.

On appeal, Jackson does not challenge the sufficiency of the evidence regarding the court's contempt finding. Instead, Jackson complains about notice and the imposition of her punishment.

Jackson argues that the circuit court erred by violating her due-process rights because the court found her in contempt without affording her notice of the charge and giving her an opportunity to present evidence to oppose the contempt finding. Jackson also asserts that the circuit court erred by imposing a summary punishment of imprisonment because her contempt did not occur in the court's presence. She claims that the circumstances in this case are similar to the circumstances in *Bloodman v. State*, 2010 Ark. 169, 370 S.W.3d 174.[3]

It is undisputed that Jackson was held in criminal contempt. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *In re Guardianship of Bevill*, 2019 Ark. 218, 576 S.W.3d 27; *McCullough v. State*, 353 Ark. 362, 108 S.W.3d 582 (2003). Criminal penalties may not be imposed on an alleged contemnor who has not been afforded the protections that the Constitution requires of criminal proceedings. *Bloodman*, 2010 Ark. 169, 370 S.W.3d 174. The due-process clause as applied in criminal proceedings requires that an alleged contemnor be notified that a charge of contempt is pending against her and that she be informed of the specific nature of the charge. *Id.*; *Coleman v. Coleman*, 2016 Ark. App. 324, 497 S.W.3d 688.

Further, Arkansas's contempt statute provides that "[c]ontempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense." Ark. Code Ann. § 16-10-108(c) (Repl. 2010); *see also Pounders v. Watson,*

---

[3]Although she raises these arguments separately, we find it necessary to address them together.

521 U.S. 982 (1997) (discussing the summary contempt exception to normal due-process requirements). Further, our constitution and caselaw make it clear that the courts of this state have inherent power to punish a contemnor for contempt committed in the presence of the court or in disobedience of process. *Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993).

In this case, we find no error by the circuit court. At the March 24 hearing, the court heard Jackson's arguments for a continuance and denied her request. The court ordered Jackson to appear for the jury trial that afternoon. Jackson informed the court that she would not appear for the trial, and the court stated that it would hold her in contempt if she did not appear. Jackson responded that she understood, and she did not appear. Moreover, the court sentenced Jackson following a hearing.

We find that this case is not analogous to *Bloodman*. In that case, a circuit court notified Bloodman of a hearing concerning the State's allegations that she made misrepresentations to the court. *Bloodman*, 2010 Ark. 169, 370 S.W.3d 174. Bloodman objected to the hearing and did not appear. *Id.* The circuit court held the hearing and found Bloodman in criminal contempt for making the misrepresentations. *Id.* Bloodman appealed the contempt finding, and the supreme court reversed and held that Bloodman had been deprived of due process because the circuit court's letter did not inform her of the possibility of a criminal-contempt finding. *Id.*

Here, the circuit court specifically notified Jackson that if she did not appear for trial, the court would hold her in contempt. Jackson responded that she understood. Accordingly,

9

this case is unlike *Bloodman*, and we affirm the circuit court's finding of contempt against Jackson.

Affirmed.

THYER and BROWN, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.