COMMONWEALTH *vs.* RONALD IAN SEGAL.

Essex.    September 11, 1987. — November 9, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Contempt. Attorney at Law,* Contempt.

A judgment of summary contempt entered against an attorney in the course
   of a bench conference during a jury trial of his client was not warranted
   on the record of the proceedings or as matter of law; moreover, the trial
   judge did not follow the requirements of Mass. R. Crim. P. 43 concerning
   summary adjudications of criminal contempt. [98-100]

ADJUDICATION of contempt in the Haverhill Division of the
District Court Department by *William H. Sullivan,* J., on May
6, 1986.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael F. Natola* (*Ronald Ian Segal* with him) for the
defendant.

*Annette C. Benedetto,* Assistant Attorney General, for the
Commonwealth, submitted a brief.

WILKINS, J. We reverse the judgment of summary contempt
entered against an attorney in the course of the trial of his
client for assault and battery in a six-person jury session of
the Haverhill District Court. We see no evidence of contempt
of court on the record before us. In any event, a judgment of
summary contempt was not warranted under Mass. R. Crim.
P. 43, 378 Mass. 919 (1979). Even if it had been warranted,
the judge did not follow certain requirements of rule 43 concern-
ing summary contempt.

The Commonwealth proceeded at trial with the alleged vic-
tim unavailable. It was important, although not indispensible,
to the Commonwealth's proof to introduce in evidence certain
statements in a hospital record attributed to the alleged victim

concerning the source of her injuries. The following occurred at a bench conference when the Commonwealth offered the hospital record:

DEFENSE COUNSEL: "I object to them, Your Honor, for several reasons. Number one, I've never seen them before today."

THE JUDGE: "(Inaudible)."

DEFENSE COUNSEL: "I didn't know they existed, Your Honor. I had discovery from the Commonwealth."

THE JUDGE: "You knew she went to Bon Secours Hospital."

DEFENSE COUNSEL: "Your Honor, I took for granted I was on full discovery. That's not the — that's not my main reason here. Number Two, the Keeper of the Records is not here to testify that indeed, she is the Keeper of the Records."

THE JUDGE: "All right, your objection is overruled. I'm not hearing from you any further."

DEFENSE COUNSEL: "Your Honor, I have —"

THE JUDGE: "No. Mr. Segal, I'm not hearing from you any further."

DEFENSE COUNSEL: "I object to —"

THE JUDGE: "Mr. Segal, do you want to be locked up? Do you want to be? Mr. Ryan [court officer] — do you want to be locked up, or are you going to take the Court's ruling?"

DEFENSE COUNSEL: "Your Honor, I accept the Court's ruling —"

THE JUDGE: "Mr. Ryan, take him into custody."

THE JUDGE: "All right, Jurors. The Court's declaring a mistrial. You are free to leave. You may leave, Jurors. The Court will stand in recess."

There is no suggestion that the jury heard any of this colloquy. There is nothing to suggest that circumstances not shown in the transcript, such as gestures or counsel's tone of voice, had any bearing on the judge's determination to have the attorney taken into custody.

After the recess the judge held a hearing on the question of the sentence to be imposed for summary contempt. The entire

discussion is set forth in the margin.[1] In the course of the discussion, defense counsel quite correctly pointed out to the judge that, if his challenges to the admission of the entire hospital record were unsuccessful, he had a nonfrivolous hearsay (and perhaps constitutionally-based) objection to the admission of the alleged victim's statements contained in that hospital

[1] THE JUDGE: "Mr. Segal, the Court has summarily held you in contempt. I'd like to hear from you before the Court imposes a sentence."

DEFENSE COUNSEL: "Thank you, Your Honor. When I approached the Bench I had sought to make it known — I believe I said, Your Honor, that I had several grounds of objection. The further one that I had wished to put in the record was specifically the objection to the admission of the alleged victim's statements within the report as to what had occurred. That's what I was attempting to say, Your Honor; to put it in the record. Certainly, I respect the Court's ruling."

THE JUDGE: "Well, was that part of the hospital records?"

DEFENSE COUNSEL: Yes, Your Honor."

THE JUDGE: "You walked up and told me you hadn't seen them before."

DEFENSE COUNSEL: "I said I had not seen them before today, Your Honor. My brother did show them to me before the trial this morning. Your Honor, please? I say with the utmost respect, I know that I have a duty to accept the Court's rulings and I respect any Court's rulings, and I certainly respect Your Honor's rulings. I would suggest, Your Honor, that I have an equal duty to protect my client's rights in the record. That's what I was seeking to say and nothing more, Your Honor, at that point."

THE JUDGE: "Counsel, you know well enough how to protect your client's rights. All you have to do is say is your objection. Several times during the course of the trial you said, 'Note my objection.' There's no reason to go beyond the fact that you object. That's all that's necessary.

DEFENSE COUNSEL: "Your Honor, I respectfully disagree on this score, because I would have to state for the record in order to preserve it, were it necessary for appellate review, the very specific ground of objection."

THE JUDGE: "The only thing you said to the Court was that you were objecting to these records, and you told me that the Keeper of the Records wasn't here. And, when I heard that, I told you that I didn't want to hear from you any further."

DEFENSE COUNSEL: "Yes, Your Honor, that's correct. But, what I wanted to further say; I did not want to argue the point and I certainly did and do accept the Court's ruling on that. I only further wanted to say for the record that I objected to the admissibility of them because of the statements of the victim of the cause of her injuries. And, if the Court had let them in at that point, I would have moved that those portions be deleted. That was my only purpose in persisting, Your Honor."

THE JUDGE: "You persisted too much."

DEFENSE COUNSEL: "I stood there, Your Honor. I respectfully say I respect Your Honor's rulings."

THE JUDGE: "The Court's imposing a sentence of $500.00. [The maximum fine permissible on summary contempt.] You caused a mistrial; we've wasted all afternoon; you've wasted the time of a lot of people. The Court

record. See G. L. c. 233, § 79 (1986 ed.) (admission of hospital records as they "relate to the treatment and medical history" but not to "the question of liability"); *Commonwealth* v. *Bohannon,* 385 Mass. 733, 749-750 (1982); *Bouchie* v. *Murray,* 376 Mass. 524, 527-530 (1978); *Commonwealth* v. *Lannon,* 364 Mass. 480, 484 (1974). The judge erred in thinking that a general objection would have preserved that question for appellate review. See *Costonis* v. *Medford Hous. Auth.,* 343 Mass. 108, 116 (1961); *Irving* v. *Goodimate Co.,* 320 Mass. 454, 460 (1946); *Solomon* v. *Dabrowski,* 295 Mass. 358, 359 (1936). Defense counsel tried to make that valid point and had a duty to his client to do so.

First, as we have said, as a matter of law we see nothing contemptuous of the court in what defense counsel did. See *Sussman* v. *Commonwealth,* 374 Mass. 692, 702 (1978). It is true that defense counsel sought to raise an objection after the judge said that he was not going to hear further from defense counsel. That persistence cannot be seriously faulted, however, because defense counsel had a further and different point to argue. See *Sussman* v. *Commonwealth, supra* at 698 (after a warning, a lawyer "should desist, taking such steps only as are necessary to preserve his client's right of appellate review"). When warned and asked if he accepted the court's ruling, defense counsel said that he did. The judge's inexplicable response to that statement was to order defense counsel into custody forthwith in front of the jury. Contempt or the threat of contempt should not be used to chill an attorney's vigorous but respectful advocacy on behalf of a criminal defendant.

Surely circumstances warranting the imposition of summary contempt were not involved. Rule 43, which is set forth in the

---

made its record. It's a ruling very clear and you refused to accept it to the extent that I had to call the court officer up here."

DEFENSE COUNSEL: "If your Honor pleases; I don't want to argue with the Court at this point. I only wish to reiterate that —"

THE JUDGE: "How much time do you need to pay the $500?"

DEFENSE COUNSEL: "I'd like to appeal it. Your Honor."

THE JUDGE: "All right. You appeal it."

margin,[2] permits the summary punishment of a criminal contempt only if "summary punishment is necessary to maintain order in the courtroom" and if certain other conditions are met. All that transpired here occurred at a bench conference. There was not even a hint of a threat to order in the courtroom. Defense counsel had done nothing earlier in the trial which approached contempt of court or threatened order in the courtroom. Defense counsel accepted the judge's ruling. Quite simply, a judgment of summary contempt was not justified, even if for some reason (which we do not see) defense counsel did commit contempt of court.

Moreover, the judge did not follow the procedures of rule 43(b) in ruling that defense counsel was in summary contempt of court. He made the judgment of contempt before giving defense counsel, as the rule requires, "at least a summary opportunity to adduce evidence or argument relevant to guilt

---

[2]                                   "Rule 43

SUMMARY CONTEMPT PROCEEDINGS

(Applicable to District Court and Superior Court)

(a) AVAILABILITY OF SUMMARY PROCEEDINGS. A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

(1) The contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

(3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars.

(b) NATURE OF THE PROCEEDINGS. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

(c) APPEAL. The contemnor's only right of appeal shall be to the Appeals Court."

or punishment." Mass. R. Crim. P. 43 (b). See *Sussman* v. *Commonwealth,* 374 Mass. at 699. Nor is there, as the rule requires, a judgment of contempt "signed by the judge and entered on the record" containing "a recital of those facts upon which the adjudication of guilt is based." The rights of the defendant on trial probably required that the judge, in the words of rule 43 (b), "defer imposition or execution of sentence until after the trial [was] completed." See *Sussman* v. *Commonwealth, supra* at 700 n.7.[3]

*Judgment reversed.*

---

[3] A declaration of a mistrial in this case may well not have been a manifest necessity justifying the defendant's retrial.

We know from the record that the defendant thereafter moved for dismissal of the complaint on the ground of former jeopardy and for recusal of the judge in the event of retrial. The judge denied both motions. Approximately two months later, the defendant, represented by the same counsel, was tried before the same judge and a new jury and found not guilty. The victim appeared and testified at the second trial. Defense counsel advises us in his brief that, at the second trial, on his objection the judge excluded the alleged victim's statements contained in the hospital record.