R.S. McCULLOUGH *v.* STATE of Arkansas; The Honorable
Sam Pope, Circuit Judge

02-873                                              108 S.W.3d 582

Supreme Court of Arkansas
Opinion delivered May 29, 2003

[Petition for rehearing denied July 3, 2003.*]

* THORNTON, J., would grant. CORBIN, J., not participating.

*Darrell F. Brown & Assoc.*, by: *Darrell F. Brown*; and *McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

TOM GLAZE, Justice. Appellant R.S. McCullough, a licensed attorney, brings this appeal from an order holding him in contempt of court and sentencing him to jail for ten days. McCullough argues that the evidence was insufficient to support a finding of contempt.

McCullough represented Calvin Lamont Walker on drug-related charges in the Ashley County Circuit Court. Prior to McCullough's undertaking Walker's representation, Walker was represented by Don Gillaspie. Walker's case was originally set for omnibus hearing on February 5, 2001, and for jury trial on March 20-23, 2001. The trial was subsequently moved to April 24-25, 2001. Walker retained McCullough on March 30, 2001, and after several more requests for continuances by the defense, the trial was eventually set for jury trial during the first week of April in 2002.

On April 5, 2002, a jury was called to hear the case, but McCullough failed to appear. The trial court announced to the jury that McCullough had been stopped for speeding in Pine Bluff, but because he was "behind in child support, . . . he's now in jail." The court dismissed the jury. McCullough made it to court later in the morning, and informed the court that he had not been in jail. The judge responded, "Well, I don't know anything about that, but I just related what was informed to me."

At that time, the court also took up two motions McCullough had previously filed: a motion for continuance, which the court granted because it had already dismissed the jury, and a motion to dismiss the charges based on selective prosecution. McCullough informed the court that one of the reasons he had sought the continuance was because he had only recently received information he had requested from the prosecutor regarding several other prosecutions; it was on the basis of these other prosecutions that McCullough had filed a so-called *Yick-Wo* motion.[1]

---

[1] *See Yick-Wo v. Hopkins*, 118 U.S. 356 (1886) (holding that a statute, even though fair on its face, may become invalid if it is administered by the state "with an evil eye and an unequal hand"). In his motion, McCullough alleged that his client, Calvin Walker, who was African-American, was not being offered probation on his drug charges, even though several other white men had been charged with similar offenses and had been offered

The trial court declined to consider the motion, and the following colloquy ensued:

THE COURT: Well, Mr. McCullough, I'm not going to continue this. This matter has been set for omnibus hearing. You've had the opportunity to get this material —

McCULLOUGH: We didn't know about this.

THE COURT: — to present your motion. This case was initially filed November 17th of 2000.

McCULLOUGH: I wasn't representing Mr. Walker when this case was filed.

THE COURT: Well, I know, but somebody was.

McCULLOUGH: Well, I'm not sure, but I guess Mr. Gillaspie was. I'm not sure if he had a lawyer before Mr. Gillaspie.

THE COURT: I don't know exactly when you got in it. I think you were in it when I, it was transferred to me from Judge Glover as of the first of the year. The file will reflect when you got in it. I don't know when that was. But certainly it appears to me that you've had sufficient time to request and get this information and that you didn't do it. Now, —

McCULLOUGH: What you're saying, you don't know. You don't know when I even got the information about the selective prosecution issue.

THE COURT: Well —

McCULLOUGH: I got that —

THE COURT: Stop arguing with me.

McCULLOUGH: I'm not arguing with the court.

THE COURT: I've ruled. That's my ruling. I've ruled that you have waived your right to a hearing on this motion because you did not file it before the omnibus hearing and you could have. Now,

probation. The State answered that all of those defendants were first offenders, while Walker had at least two prior felony convictions.

> that's my ruling.  I don't want any more argument.

McCULLOUGH:   Do I get to address the record?

THE COURT:   No, sir.

McCULLOUGH:   Okay. Thank you.

The case was then set for jury trial on June 3, 2002.

On the morning of June 3, 2002, a jury was called, and the State announced that it was ready for trial. McCullough, however, declared that the defense was not ready for trial, and the attorneys approached the bench, whereupon the following transpired:

McCULLOUGH:   Judge, we'd ask this court to recuse under *Bolden v. State*, 262 Ark. 718, 561 S.W.2d 281 [(1978)], . . . and also *Elser v. State*, 243 Ark. 34, 418 S.W.2d 389 [(1967)]. Judge, the court is to appear to be unbiased, not to be prejudicial to a person that is going to stand trial and be a fair forum.

After Mr. Walker's last appearance in this court, especially with the disinformation that was given out, Mr. Walker feels like, and counsel does too, to some extent, that this court cannot be fair with the motion and because of the selective prosecution, not only on the particulars, but prejudging that motion and deciding that it was untimely filed and not knowing the underlying facts.

Also, Mr. Walker explained to me, I didn't recall at the time, but that this court had previously prosecuted him in his earlier case or cases. And he thinks that's why the court did not want to give him a fair shot because the court thinks that while it prosecuted him in the past that means he obviously has to be guilty.

Also, Judge, Mr. Walker and counsel, also as I indicated on Friday, intended to file a complaint with the Judicial Ethics Committee and that that has been done and is being trans-

mitted. I think the court has no choice other than to recuse from a matter of this type.

THE COURT: I disagree with you on that regard. I know that the court, the supreme court has ruled that just because a complaint has been filed doesn't mean that you have to recuse. If that was the case, any defendant could file a complaint at any time and get that, force a trial judge out, and he can't do that.

MCCULLOUGH: Everybody — I imagine everybody would get one bite at that apple if that was the case unless they could show that it was —

THE COURT: That's the ruling. Don't argue with me.

MCCULLOUGH: I'm not arguing with you.

THE COURT: Yes, you are.

MCCULLOUGH: I have a right to make a record.

THE COURT: I've ruled.

MCCULLOUGH: I have a right to make a record.

THE COURT: No. You've made your record.

MCCULLOUGH: Just like that. You can't —

At that point, in open court in the presence of the prospective jurors, the court ordered McCullough be taken to jail. After a short recess, the court announced on the record that he had held McCullough in contempt for arguing with the court and sentenced him to ten days in the county jail. It is from this contempt finding that McCullough appeals.

■■ "Every court of record shall have power to punish, as for criminal contempt, persons guilty of . . . [d]isorderly, contemptuous, or insolent behavior committed during the court's sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority[.]" Ark. Code Ann. § 16-10-108(a)(1) (Repl. 1999). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). The standard of review of a case of criminal contempt is settled. An appellate court views

the record in the light most favorable to the trial judge's decision, and will sustain the decision if supported by substantial evidence and reasonable inferences therefrom. *McCullough v. State*, 339 Ark. 288, 5 S.W.3d 38 (1999) (trial court forewarned McCullough against referring to evidence ruled inadmissible, and held McCullough in contempt for violating court's admonitions); *Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993).

McCullough does not argue that the trial court issued an invalid order, or that the ten-day jail sentence was improper. Rather, he only contends that his actions were not contemptuous. However, it is apparent from the portions of the record quoted above that McCullough frequently interrupted the judge and argued with him. Although McCullough appears to assert that it was the judge who "engaged in loud and aggressive speech," and that he (McCullough) never used "disrespectful language or tones in conversing with the trial court," on review, this court cannot make such determinations. *See, e.g., Bell & Walker v. State*, 258 Ark. 976, 530 S.W.2d 662 (1975) (noting that trial judge can hear testimony and observe demeanor of parties, "an opportunity denied us as we review the cold record"); *cf. Rosenzweig v. Lofton*, 295 Ark. 573, 751 S.W.2d 729 (1988) (where, in addition to the transcript, this court also had an audio recording of the proceedings in which attorney was held in contempt, and concluded that the attorney's behavior "did not approach contemptuous conduct in either his remarks or his tone").

Here, viewing the record in the light most favorable to the trial judge's decision, substantial evidence, as described above, supports the trial court's decision to hold McCullough in contempt. However, this court has recognized that the principal justification for contempt lies in the need for upholding public confidence in the majesty of the law and in the integrity of the judicial system, and when we have found these ends will be met despite a reduction or even a remission of a jail sentence for contempt, it has been our practice to modify the judgment. *See Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000); *Arkansas Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998); *Carle, supra*. Given the circumstances of this case, we affirm the contempt finding, but reduce

McCullough's jail sentence to three days, giving him credit for whatever time he has already served.

BROWN, J., concurring in part and dissenting in part.

CORBIN, J., not participating.

ROBERT L. BROWN, Justice, concurring in part and dissenting in part. I agree with the majority that respect and order in the courtroom are paramount concerns and that the circuit judge was correct in holding Mr. McCullough in contempt for arguing with him. We have said that an act is contemptuous if it interferes with a court's business or proceeding, or reflects upon the court's integrity. *See Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995). Contempt proceedings are employed to preserve the power and dignity of the court. *See id.*

The majority quotes two colloquies between Mr. McCullough and the trial judge: one that took place on April 5, 2002, and a second that occurred on June 3, 2002. The circuit judge, however, made it clear in his order, that he was holding Mr. McCullough in contempt only for what transpired on June 3, 2002. The judge said in his order:

> On this 3rd day of June, 2002, this matter is considered and called for jury trial whereupon the State announced ready for trial, but the Defense announced not ready, and Defense Counsel R.S. McCullough was called to the Bench.

> The Defense Counsel Mr. McCullough then made a motion for the trial court to recuse, during which he advised the trial court that he had filed a complaint with the Judicial Conduct Committee and for that reason this Court was required to recuse. The Court advised Mr. McCullough that that was not the law, whereupon, he proceeded to argue with the Court's ruling. He stated that he was entitled to make a record. The Court advised him that he had already made his record on that point, whereupon, he persisted to argue with the Court's ruling. The Court then held him in direct contempt for arguing with the Court and sentenced him to ten days in the Ashley County Jail. Bond set at $1200.00 cash only.

The relevant colloquy leading to the contempt holding was this:

(Whereupon, the following was had at the Bench out of the hearing of the prospective jurors:)

. . . .

MR. McCULLOUGH:    . . . [T]he Court is to appear to be unbiased, not to be prejudicial to a person that is going to stand trial and be a fair forum. After Mr. Walker's last appearance in this court, especially with the disinformation that was given out, Mr. Walker feels like, and counsel does too, to some extent, that this Court cannot be fair with him. This is based upon how the Court dealt with the motion and because of the selective prosecution, not only on the particulars, but prejudging that motion and deciding that it was untimely filed and not knowing the underlying facts.

Also, Mr. Walker explained to me, I didn't recall at the time, but that this court had previously prosecuted him in an earlier case or cases. And he thinks that's why the Court did not want to give him a fair shot because the Court thinks that while it prosecuted him in the past means he obviously has to be guilty.

Also, Judge, Mr. Walker and counsel, also as I indicated on Friday, intended to file a complaint with the Judicial Ethics Committee and that has been done and is being transmitted. I think the Court has no choice other than to recuse from a matter of this type.

THE COURT:    I disagree with you on that regard. I know that the Court, the Supreme Court has ruled that just because a complaint is filed doesn't mean that you have to recuse. If that was the case, any defendant could file a complaint at any time and get that, force a trial judge out, and he can't do that.

MR. McCULLOUGH:    Everybody — I imagine everybody would get one bite of that apple if that was the case unless they could show it was —

THE COURT:    That's the ruling. Don't argue with me.

MR. McCULLOUGH:    I'm not arguing with you.

THE COURT:    Yes, you are.

MR. McCULLOUGH:    I have a right to make a record.

THE COURT:    I've ruled.

MR. McCULLOUGH:    I have a right to make a record.

THE COURT:    No, you've made your record.

MR. McCULLOUGH:    Just like that. You can't —

(Whereupon, the following was had in open court in the presence of the prospective jurors:)

THE COURT:    Take him to jail. That'll be ten days. We're going to be in recess. The jury is dismissed.

Two things strike me about this exchange. This court has, time and again, noted that lawyers must make a record when objecting and moving for some form of relief. *See, e.g., Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001) (holding that objection on basis of Ark. R. Evid. 803 was argued for the first time on appeal where the record revealed no objection on that particular basis; "Parties are bound on appeal by the scope and nature of the objections and arguments they presented at trial."). Secondly, the statements by Mr. McCullough, although contemptuous, were not that egregious. Certainly, they did not rise to the level of refusing to go to trial when the trial date has been scheduled, *see Johnson v. Johnson*, 343 Ark. 186,33 S.W.3d 492 (2000), or failure to abide by a court order, *see Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002).

Other jurisdictions have recognized that zealous advocacy must be permitted and that "it is only when [that advocacy] is boisterous or disrespectful to the degree that it constitutes an imminent threat to the administration of justice that summary punishment for contempt will be authorized." *State v. Boyd*, 166 W. Va. 690, 696, 276 S.E.2d 829, 833 (1981). For example, in a

Massachusetts trial court, this colloquy ensued between counsel and the trial judge:

| | |
|---|---|
| THE JUDGE: | "All right, your objection is overruled. I'm not hearing from you any further." |
| DEFENSE COUNSEL: | "Your Honor, I have—" |
| THE JUDGE: | "No. Mr. Segal, I'm not hearing from you any further." |
| DEFENSE COUNSEL: | "I object to—" |
| THE JUDGE: | "Mr. Segal, do you want to be locked up? Do you want to be? Mr. Ryan [court officer]— do you want to be locked up, or are you going to take the Court's ruling?" |
| DEFENSE COUNSEL: | "Your Honor, I accept the Court's ruling—" |
| THE JUDGE: | "Mr. Ryan, take him into custody." |

*Commonwealth v. Segal*, 401 Mass. 95, 96, 514 N.E.2d 1082, 1083-84 (1987). The Massachusetts appellate court reversed the contempt holding and said: "Contempt or the threat of contempt should not be used to chill an attorney's vigorous but respectful advocacy on behalf of a criminal defendant." *Id.* at 98, 514 N.E.2d at 1085. Again, I agree that Mr. McCullough crossed the line, but there was also no warning that contempt was imminent, as there was in the *Segal* case.

As noted by the majority, this court, under its inherent authority, has often modified punishment for contempt. *See, e.g., Johnson v. Johnson, supra* (reducing an unlimited sentence of jail time to time already served on day of contempt); *Arkansas Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998) (remitting the amount of time to be served from fifty-three days to two); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993) (reducing the sentence of time from ninety days in jail to five days); *Page v. State*, 266 Ark. 398, 583 S.W.2d 70 (1979) (reducing sentence of ten days' imprisonment to time served); *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974) (reducing sentence from "until . . . child is returned . . . and . . . an additional three days" to time served which was "at least overnight").

This court has also modified contempt sentences even when the appellant did not allege any error in the sentence nor requested a modification. *See, e.g., Johnson v. Johnson, supra.* In the instant case, the circuit judge levied the maximum statutory sentence of ten days against Mr. McCullough. *See* Ark. Code Ann. § 16-10-108(b) (Repl. 1999). Mr. McCullough already had a cash bond of $1,200 paid on his behalf and served some jail time for contempt, according to statements made in his brief.

Because Mr. McCullough was attempting to make his record in this case, albeit in an argumentative fashion and because $1200 had been paid on his behalf and he had served some time for contempt, I would also modify his contempt sentence. However, rather than requiring Mr. McCullough to serve three more days in jail, I would modify his sentence to time served. *See Johnson v. Johnson, supra.* In my judgment, the power and dignity of the court are preserved by such a sentence.

For that reason, I dissent in part.