## Admilson Vizcaino *vs.* Commonwealth.

Suffolk. February 9, 2012. - May 21, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Contempt. Practice, Criminal,* Contempt proceeding.

Discussion of a judge's power, pursuant to Mass. R. Crim. P. 43, to punish contumacious conduct summarily. [270-273]

In the circumstances of a criminal proceeding, a Superior Court judge did not convict the defendant of summary contempt pursuant to Mass. R. Crim. P. 43 but rather took actions consistent with the initiation, by operation of law, of a nonsummary contempt proceeding pursuant to Mass. R. Crim. P. 44, and thus jeopardy, if it applied, never terminated; therefore, a later indictment for nonsummary criminal contempt was not barred under principles of double jeopardy. [273-279]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 30, 2010.

The case was reported by *Spina,* J.

*Jonathan Shapiro (John Cushman* with him) for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney (*Mark A. Hallal & Nicholas J. Walsh,* Assistant District Attorneys, with him) for the Commonwealth.

SPINA, J. Rule 43 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 919 (1979), narrowly defines the circumstances in which a judge may summarily punish the offense of criminal contempt of court. Summary punishment may not be imposed, for instance, if the punishment exceeds three months' imprisonment or a fine of $500. *Id.* Where summary contempt is unavailable, the contempt must be referred for prosecution by complaint or indictment pursuant to Mass. R. Crim. P. 44, 378 Mass. 920 (1979), and the defendant is entitled to a trial by jury. See *Commonwealth* v. *Eresian,* 389 Mass. 165, 170 (1983).

Admilson Vizcaino (defendant) was ordered to testify at a

murder trial, having been granted immunity from prosecution. On May 4, 2010, and again on May 12, the defendant appeared at the trial but refused to provide testimony. On both occasions, the judge held him in civil contempt. On the second occasion, the judge stated that in addition to civil contempt, "[I]t is my judgment, and I find that [the defendant] has committed a summary contempt." The judge did not enter a judgment of criminal contempt on the court's docket, however, and did not sentence the defendant for criminal contempt.

On May 28, with the murder trial over, the defendant was returned to court, and finding that his refusal to testify merited punishment in excess of three months, the judge referred the matter for prosecution pursuant to rule 44. The defendant subsequently was indicted for nonsummary criminal contempt. The defendant moved to dismiss the indictment on the ground of double jeopardy, claiming that at the May 12 proceeding he already had been adjudged in summary contempt, thus barring his subsequent prosecution for nonsummary contempt. A new judge was assigned to the case. Mass. R. Crim. P. 44 (c). The judge denied the motion on the ground that the defendant had not been adjudged in summary contempt on May 12. The defendant petitioned a single justice of this court for relief pursuant to G. L. c. 211, § 3, see *Neverson* v. *Commonwealth*, 406 Mass. 174, 175-176 (1989), and the single justice reserved and reported the case without decision to the full court. We now hold that, because the defendant was not convicted of summary contempt on May 12, jeopardy, if it applied, never terminated. On remand to the county court, the petition for relief is to be denied.

1. *Background.* We begin by recounting the proceedings below. The defendant first came to court in this matter as an accused in a murder. On April 18, 2008, the defendant and four others — Paul Goode, Markeese Mitchell, Pedro Ortiz, and Terrance Pabon — were indicted for the murder of Terrance Jacobs in 2007. At the time, the defendant was sixteen years old. It was soon discovered that the defendant had been an eyewitness but not a participant in the crime, and on January 13, 2009, the murder charge against him was nol prossed and he was discharged. Goode, Mitchell, Ortiz, and Pabon remained as defendants.

On March 12, 2010, shortly before the trial was to begin, the defendant was subpoenaed to testify. The defendant indicated, through counsel, that he would refuse to testify, invoking his privilege against self-incrimination under the State and Federal Constitutions. The trial began, and about one week later, on April 14, 2010, the judge held a hearing regarding the defendant's testimony. At the conclusion of the hearing the judge determined that the defendant had validly invoked his privilege against self-incrimination.

The Commonwealth petitioned for an order of immunity. The judge assented and, on April 27, 2010, issued an order granting full transactional immunity to the defendant and ordering him to provide testimony at the trial.

The defendant was called as a witness on May 4, 2010. Defense counsel informed the judge that the defendant was unwilling to testify, despite the grant of immunity and order to provide testimony. The defendant "believe[d] that testifying would present a risk to his safety and the safety of his family." The defendant was sworn, took the stand, and refused to testify under oath. The judge engaged the defendant in a colloquy, wherein the defendant acknowledged that he was now legally required to testify but nonetheless persisted in his refusal.

The judge signaled her intention to hold the defendant in civil contempt.[1] Defense counsel objected, arguing that civil contempt was futile, as the defendant would not change his mind. Defense counsel argued that the judge should instead treat the offense as a nonsummary criminal contempt pursuant to rule 44. Remarking that "being in custody sometimes has effects," the judge rejected defense counsel's argument and ordered that the defendant be

---

[1]The judge's actions with regard to civil contempt are not at issue. A judgment of civil contempt presents no double jeopardy bar to a later prosecution for criminal contempt, because the purposes of civil and criminal contempt are different. *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283-284, 287 (1993). Civil contempt is remedial: it aims to coerce the defendant into "purging" his contempt. See *Birchall, petitioner*, 454 Mass. 837, 847-848 (2009); *id.* at 848, quoting *International Union, United Mine Workers* v. *Bagwell*, 512 U.S. 821, 828 (1994) (*United Mine Workers*) (contemnor "carries the keys of his prison in his own pocket"). Criminal contempt is punitive: it aims to punish the defendant for a completed contemptuous act. *United Mine Workers*, *supra* at 828-829. A single act may be punished as a civil contempt, a criminal contempt, or both. *Root* v. *MacDonald*, 260 Mass. 344, 363-365 (1927).

taken into custody for civil contempt. The same day, the judge entered an order of civil contempt committing the defendant to a house of correction for thirty days or until the end of the trial.

The defendant next appeared in court on May 12, 2010, during the fifth week of the trial.[2] Defense counsel again indicated that the defendant would refuse to testify. The judge inquired of the defendant and he again refused.[3] There followed a lengthy discussion among the judge, the prosecutors, and defense counsel on the question how long the defendant could be held for civil contempt. The judge acknowledged the defendant's concern for his family's safety and his own personal safety, but stated that "as a matter of the public safety it's important that an order to testify be enforced." The judge therefore announced that she would enter a judgment of civil contempt. The judge then continued:

> "Now, I would also say with respect to [r]ule 43 that it is my judgment, and I find that [the defendant] has committed a summary contempt through the same conduct just referred to; that is, that in the presence of Court [the defendant] has twice refused to testify in this trial, [which] is contemptuous conduct that warrants punishment as well as civil coercion. It would be my intention to at least give consideration to a sentence of longer than three months. I would certainly hear from both sides as to what the appropriate sentence would be. It's not time to have that hearing yet. If I come to the conclusion after hearing both sides [that] I would indeed sentence to more than three months then I would, at that time, refer the matter for prosecution under [r]ule 44."

The judge thereafter entered a judgment of civil contempt committing the defendant to a house of correction for one year or less, or until he complied with the court order. The judge did not enter a judgment of criminal contempt at any point after the May 12 proceeding.

---

[2]The record does not reveal why the defendant was again brought before the court, i.e., whether the defendant had given any indication that he would purge his contempt by providing testimony. The prosecutor stated at the beginning of the proceeding that he wanted "to establish . . . that [the defendant is] still refusing to answer questions."

[3]The defendant did not take the witness stand on this occasion. He simply stood and spoke to the judge.

The trial concluded on May 24, 2010. Goode, Mitchell, Ortiz, and Pabon were found guilty of murder in the second degree.

The defendant next appeared before the judge on May 28, 2010. The judge stated, "So, as I understand it, the status of this matter is [the defendant] has been held on an order of civil contempt for one year or until such time as he would testify. He has not testified, but the trial is now over, and therefore, he has no opportunity to testify." She solicited arguments as to an appropriate sentence. The prosecutor argued that a sentence of more than three months' imprisonment was appropriate, because of the gravity of the crime and the importance of the defendant's eyewitness testimony. Defense counsel stressed the youth of the defendant, his concern for his safety and his family's safety, and the time he had already been incarcerated before the murder charge was nol prossed. At the conclusion of the hearing, the judge decided that she would impose a sentence longer than three months; the indictment at issue followed.

2. *Statutory background.* Although the power to punish contumacious conduct is inherent in the courts, *Sussman* v. *Commonwealth*, 374 Mass. 692, 695 (1978), citing *Illinois* v. *Allen*, 397 U.S. 337, 343-344 (1970), rule 43 narrowly limits the availability of summary contempt.[4] Summary contempt refers to criminal contempt punished by the judge summarily — that

---

[4]Rule 43 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 919 (1979), has not been amended since its adoption by this court in 1979. It reads:

"(a) AVAILABILITY OF SUMMARY PROCEEDINGS. A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

"(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

"(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

"(3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars.

"(b) NATURE OF THE PROCEEDINGS. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice of the charges and at least a summary op-

is, without due process protections such as formal notice, a hearing, and "all that goes with a conventional court trial." *Sacher* v. *United States*, 343 U.S. 1, 9 (1952). See Mass. R. Crim. P. 43 (a). The justification for dispensing with due process protections is that the judge has personally witnessed the contempt, and swift punishment is necessary to maintain order in the court room. *Sacher* v. *United States, supra* at 8-9. Because due process protections are lost, however, "[s]ummary punishment always, and rightly, is regarded with disfavor." *Commonwealth* v. *Corsetti*, 387 Mass. 1, 7 (1982), quoting *Sacher* v. *United States, supra* at 8. Accordingly, rule 43 is narrowly written, and narrowly construed. *Commonwealth* v. *Corsetti, supra.*

The requirements of rule 43 are based in part on Fed. R. Crim. P. 42 (Federal rule), but depart from that rule in several important respects. See Reporters' Notes to Mass. R. Crim. P. 43, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1735 (LexisNexis 2011-2012) (Reporters' Notes to rule 43). Generally speaking, rule 43 provides more due process protection to contemnors than the Federal rule. See, e.g., *id.* ("Subdivision [a][2] goes beyond the minimum constitutional requirements that must be afforded to contemnors").

First, our cases establish that a contemnor is entitled to be warned that he is in danger of being held in contempt, except in cases of "flagrant" contempt.[5] *Sussman* v. *Commonwealth, supra* at 697.

---

portunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

"(c) APPEAL. The contemnor's only right of appeal shall be to the Appeals Court."

[5]The warning makes clear to the defendant that his "conduct is impermissible and that specified sanctions may be imposed for its repetition." *Sussman* v. *Commonwealth*, 374 Mass. 692, 697 (1978). The warning requirement was met in this case, and the parties do not argue otherwise.

Second, whereas the Federal rule generally dispenses with the requirements of notice and a hearing, the Massachusetts rule provides that, before summarily adjudicating a contempt, the judge must give the contemnor notice and "at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment." See Mass. R. Crim. P. 43 (b). The Massachusetts rule provides more due process protection to contemnors than the Federal rule by giving contemnors some minimal opportunity to defend or explain their conduct in mitigation. See Reporters' Notes to rule 43, *supra* at 1736.

Both the Federal rule and the Massachusetts rule require the judge to enter a written judgment of contempt reciting the facts upon which the contempt is based. Mass. R. Crim. P. 43 (b). Fed. R. Crim. P. 42 (b) (requiring certification that judge saw or heard contemptuous conduct). The Federal rule is silent as to when the judgment must be entered.[6] Under rule 43 (a) (2), the judgment must be entered "upon the occurrence" of the contemptuous conduct. Thus, in order to convict a defendant of summary contempt, a judge must enter a judgment of criminal contempt on the court's docket contemporaneously with the contemptuous conduct, taking into account whatever reasonable period of time is needed to conclude other matters and prepare the order.[7] See, e.g., *Commonwealth* v. *Wilson*, 81 Mass. App. Ct. 464, 471 (2012) (permissibility of minor delay). The rationale for this stringent requirement is that "where necessity does not demand immediate action, a contemnor is to have the same rights as other criminal defendants." Reporters' Notes to rule 43, *supra* at 1735.

Rule 43 (b) does allow a judge to delay imposition or execution of the *sentence* — as opposed to the judgment — until the end of trial "[w]here the interests of orderly courtroom procedure

---

[6]The United States Supreme Court appears to have construed Fed. R. Crim. P. 42 (Federal rule) to allow judges in certain rare circumstances to delay adjudication of a summary contempt until the conclusion of the trial. *Sacher* v. *United States*, 343 U.S. 1, 11 (1952). See *Taylor* v. *Hayes*, 418 U.S. 488, 497-498 (1974). See also 3A C.A. Wright & S.N. Welling, Federal Practice and Procedure § 706, at 326-329 (2010). In Massachusetts, rule 43 unequivocally requires that the adjudication be contemporaneous with the conduct.

[7]We see no need to prescribe a particular time period that will satisfy the contemporaneity requirement. The standard is one of reasonableness, and may change somewhat depending on the circumstances facing the judge.

and substantial justice require." The rule was devised particularly for the situation where an attorney has been held in summary contempt but the trial is ongoing. Reporters' Notes to rule 43, *supra* at 1735, citing *Taylor* v. *Hayes*, 418 U.S. 488, 498 (1974). In such a situation, punishing (i.e., sentencing) an attorney for summary contempt might result in prejudice to the attorney's client. See *Sacher*, *supra* at 10.

Rule 44, regarding nonsummary criminal contempt — that is, criminal contempt to which due process requirements attach — is at once simpler in its prerequisites and broader in its reach: "All criminal contempts not adjudicated pursuant to rule 43 shall be prosecuted by means of complaint, unless the prosecutor elects to proceed by indictment." The defendant is entitled to a trial by jury. *Commonwealth* v. *Eresian*, 389 Mass. 165, 170 (1983). Rule 44 is employed in three scenarios: (1) where a judge chooses at the outset to refer the matter for complaint or indictment; (2) where a judge notifies the contemnor that his conduct constitutes a summary contempt, but then chooses to proceed nonsummarily after affording him a "summary opportunity" to be heard, see *id.* at 170 n.1; and (3) where a judge must proceed under rule 44 because a requirement of rule 43 is missing, see Reporters' Notes to Mass. R. Crim. P. 44, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1740 (LexisNexis 2011-2012) (Reporters' Notes to rule 44) ("Contempts that *are not or cannot* be tried summarily in accordance with [r]ule 43 must be tried under the provisions of [r]ule 44" [emphasis added]).

In the case at bar, summary contempt was — at least in theory — available to the judge to punish the defendant's refusal to provide testimony. *Commonwealth* v. *Corsetti*, 387 Mass. 1, 7-9 (1982), citing *United States* v. *Wilson*, 421 U.S. 309, 315 (1975) (reading requirement in rule 43 [a] that summary contempt be "necessary to maintain order in the courtroom" to include respectful refusal to answer questions). Whether the judge in fact employed summary contempt is a separate question, and one to which we now turn.

3. *Discussion.* Both the double jeopardy clause of the Fifth Amendment to the United States Constitution[8] and Massachusetts

---

[8]The double jeopardy clause of the Fifth Amendment to the United States

statutory and common law prohibit the government from twice placing a person in jeopardy for the same criminal offense. *Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). *Lydon* v. *Commonwealth*, 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). G. L. c. 263, §§ 7, 8, 8A. The prohibition applies to (1) subsequent prosecution for the same offense after acquittal, (2) subsequent prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Commonwealth* v. *Love*, 452 Mass. 498, 502 (2008). In this case, we are concerned with the prohibition against subsequent prosecution for the same offense after conviction.[9] The defendant argues that because he was convicted of summary contempt at the May 12 proceeding, his subsequent indictment for nonsummary criminal contempt cannot stand under double jeopardy principles. He thereby asks us to decide that double jeopardy applies to summary contempt proceedings, an issue that has been left open by the United States Supreme Court.[10] See *United States* v. *Dixon*, 509 U.S. 688, 697 n.1 (1993). Assuming, but not deciding, that the defendant was placed in jeopardy, we conclude that the defendant was not convicted of summary contempt, and therefore jeopardy never terminated. See *Commonwealth* v. *Jarvis*, 68 Mass. App. Ct. 538, 541 (2007), citing *Sattazahn* v. *Pennsylvania*, 537 U.S. 101, 106 (2003) ("where jeopardy attaches and has not terminated, considerations of double jeopardy are not implicated"). See also *Justices of Boston Mun. Court* v. *Lydon*, 466 U.S. 294, 309 (1984). Although the judge orally announced a judgment of summary contempt, she did not take the essential steps of entering the judgment on the court's docket and providing the defendant a "summary opportunity" to adduce evidence or argument before adjudication. As a result of these omissions, the contempt prosecution by operation of law

Constitution is applicable to the States through the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969).

[9]The parties agree, correctly, that the defendant was not sentenced, i.e., punished, for summary criminal contempt. The time that the defendant spent in a house of correction was pursuant to an order of civil contempt, which presents no double jeopardy bar to subsequent criminal punishment. See note 1, *supra.*

[10]This is a question that has provided ample fodder for academic discussion. See, e.g., Rudstein, Double Jeopardy and Summary Contempt Prosecutions, 69 Notre Dame L. Rev. 691 (1994).

became a rule 44 nonsummary contempt prosecution. See Reporters' Notes to rule 44, *supra* at 1740. The jeopardy, if any, was continuing.[11] Cf. *Justices of Boston Mun. Court* v. *Lydon, supra* (former two-tiered trial system in Massachusetts as continuing jeopardy). The defendant's double jeopardy argument therefore fails, and his petition must be denied.

The judge did not enter a written judgment of criminal contempt, a prerequisite to summary contempt under rule 43 (a) (2) and (b). See *Commonwealth* v. *Segal*, 401 Mass. 95, 99-100 (1987). Thus, her actions did not constitute a conviction of summary contempt under rule 43. Rather, by combined operation of rules 43 and 44, the proceeding became nonsummary under rule 44. See Reporters' Notes to rule 43, *supra* at 1735 (rule "disallows summary disposition of contempts when the judgment of contempt is not entered contemporaneously with the commission of the contempt"). See also Reporters' Notes to rule 44, *supra* ("Contempts that are not *or cannot* be tried summarily . . . must be tried under the provisions of [r]ule 44" [emphasis added]). Although the judge stated that it was her "judgment" and "find[ing]" that the defendant had committed a summary contempt by twice refusing to provide testimony in her presence, her failure to enter judgment committed her to proceeding under rule 44. For a judge to convict a defendant of summary contempt, she must enter a contemporaneous judgment of contempt on the record, signed by her, containing "a

---

[11]This case does not squarely present the question whether, when a judge does comply with the requirements of rule 43 but defers sentencing alone, the prohibition against double jeopardy is violated by a later indictment for criminal contempt pursuant to Mass. R. Crim. P. 44, 378 Mass. 920 (1979). On one hand, a criminal defendant cannot appeal until after sentencing, *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), and so the judge's action would not appear to be sufficiently final. On the other hand, the rule appears to allow a judge initially to "convict" a defendant of summary contempt but then initiate nonsummary proceedings some time later if he decides that a longer sentence is warranted. The deferred sentencing option also may raise issues with regard to a defendant's right to be sentenced "without unreasonable delay." Mass. R. Crim. P. 28 (b), 378 Mass. 898 (1979). In other contexts, we have required the consent of the defendant to delay sentencing. See *Commonwealth* v. *Delgado, supra* (defendant's consent required before placing indictment on file). Rather than resolve these issues in a case that does not raise them, we shall ask this court's standing advisory committee on the rules of criminal procedure to consider whether amendments to rule 43 or 44 are necessary or appropriate.

recital of those facts upon which the adjudication of guilt is based." Mass. R. Crim. P. 43 (b). Where these requirements are not met, the only option is to proceed by complaint or indictment pursuant to rule 44.[12]

The judge also did not provide the defendant a "summary opportunity" to adduce evidence or argument relevant to guilt or punishment before she made the statements at issue on May 12. Although the judge heard argument from the attorneys about the law applicable to contempt proceedings, as to argument relevant to guilt or punishment the judge stated, "It's not time to have that hearing yet." The judge did not hear argument relevant to guilt or punishment until May 28, well after the defendant claims to have been convicted. By waiting, the judge committed herself to a rule 44 proceeding. See *Commonwealth v. Segal, supra* at 99-100.

Our prior cases support this result. In *Commonwealth v. Segal, supra*, we reversed a judgment of summary contempt on grounds that included a lack of a signed judgment entered on the record and a failure to provide a "summary opportunity" to be heard. The judge in this case presumably was aware of this precedent but nevertheless declined to fulfil the rule 43 requirements.

We also note that under Mass. R. Crim. P. 28, 378 Mass. 898 (1979), a criminal judgment must be read in open court and entered on the court's docket, and the defendant must thereafter be notified of his right to appeal. Here, the judge complied with the first requirement of rule 28 but not the other two. Accordingly, there was no criminal "judgment" and the defendant was not convicted of summary contempt.

The defendant argues that the judge exercised the deferred sentencing option of rule 43 (b) and therefore must have found him guilty of summary contempt because there otherwise would be no conviction on which to sentence him. The defendant points to certain statements of the judge and the prosecutor at the May 28 hearing, which indicate they believed the defendant

---

[12]Notably, both the Federal rule and Rule 3.830 of the Florida Rules of Criminal Procedure, on which our rule 43 is based, require that a judgment be entered in which the judge certifies that she saw or heard the contemptuous conduct. Under the Federal rule, "[a] summary contempt conviction cannot stand in the absence of the certificate required by Rule 42(b)." 3A C.A. Wright & S.N. Welling, Federal Practice and Procedure § 707, at 330 (2010).

already had been adjudged guilty of summary contempt on May 12.[13] According to the defendant, these statements establish that he was convicted of summary contempt on May 12.

The defendant looks for support in *Commonwealth* v. *Love*, 452 Mass. 498, 504-505 (2008). There, the question was whether a District Court proceeding at which a judge erroneously had heard evidence for purposes of both a trial and a motion to suppress was a trial to which jeopardy attached. *Id.* at 498-499. We concluded that it was. *Id.* at 499. Witnesses had been sworn and provided testimony, the hallmark of a proceeding to which jeopardy attaches. *Id.* at 504. We further stated that our conclusion was "buttressed by the behavior of all concerned, including the judge and counsel, that was consistent with the conduct of a trial." *Id.*

The short answer to the defendant's argument is that the *Love* case does not stand for the broad proposition that the behavior of the parties determines how to characterize a proceeding. Rather, under our double jeopardy precedents we must look beyond labels affixed by the trial judge or the parties, to the substance of the proceeding. See *Commonwealth* v. *Gonzalez*, 437 Mass. 276, 282 (2002), cert. denied, 538 U.S. 962 (2003); *Adams* v. *Commonwealth*, 415 Mass. 360, 361-363 (1993); *Commonwealth* v. *DeFuria*, 400 Mass. 485, 487-489 (1987). Here, the judge did not exercise the deferred sentencing option on May 12 because she did not enter a contemporaneous judgment of contempt or provide the defendant a summary opportunity to be heard.[14] In any event, the judge's apparent belief that she had exercised this option should be taken with a "grain of salt," as the judge had expressed "considerable uncertainty" throughout the proceedings as to the proper procedure. Where, as here, the

---

[13]At the May 28 hearing, the prosecutor stated that the defendant already had been found guilty of summary contempt "beyond a reasonable doubt." The judge appeared to agree, soliciting arguments from the parties as to whether she should sentence the defendant to three months or less, or in excess thereof.

[14]Although rule 43 (b) does not explicitly state that the requirements of rule 43 (a) must be met before exercising the deferred sentencing option, we think this is the necessary implication of the rule. Rule 43 (b) speaks of a deferred "sentence," not a deferred judgment. Furthermore, were this not the rule, a particularly long trial would defeat the stringent requirement of contemporaneous adjudication.

hallmarks of a conviction of summary contempt are absent, the judge's actions speak for themselves. In failing to meet the requirements of rule 43 (a), the judge removed the option of employing summary punishment.

We conclude that the judge's actions from May 12 to May 28 were consistent with the initiation, by operation of law, of a nonsummary contempt proceeding pursuant to rule 44.[15] See Reporters' Notes to rule 44, *supra* at 1740. Cf. *Justices of Boston Mun. Court* v. *Lydon*, 466 U.S. 294, 309 (1984). As stated, a contempt may be classified as nonsummary either by choice of the judge or by operation of the rules of criminal procedure. Here, the judge may have believed she was proceeding by choice, but in reality her failure to adhere to rule 43 (a) and (b) foreclosed her ability to employ the summary contempt procedure. In substance, the proceeding was not a conviction of summary contempt but, rather, the initiation of a nonsummary contempt proceeding.

Our decision today gives effect to long-standing principles counselling restraint by judges in their use of the summary contempt procedure. See, e.g., *Offutt* v. *United States*, 348 U.S. 11, 13 (1954); *Sussman* v. *Commonwealth*, 374 Mass. 692, 695-699 (1978). In the case at bar, the judge may originally have

---

[15]The Commonwealth proposes an analogy to the two-tiered "trial de novo" system formerly employed in Massachusetts and twice upheld over double jeopardy challenge by the United States Supreme Court. See *Justices of Boston Mun. Court* v. *Lydon*, 466 U.S. 294, 309 (1984) (*Lydon*); *Ludwig* v. *Massachusetts*, 427 U.S. 618, 630-632 (1976) (*Ludwig*). Under that system, a defendant accused of certain crimes received an initial bench trial and, if unsuccessful, had an absolute right to a de novo jury trial. *Lydon, supra* at 297. The defendant did not have a right to obtain review of the judge's determination at the bench trial; his right was to a de novo jury trial. *Id.* In both *Lydon* and *Ludwig*, a defendant who had exercised his right to a de novo jury trial attempted to argue that the second trial violated principles of double jeopardy. See *Lydon, supra* at 297-298; *Ludwig, supra* at 623. The Supreme Court rejected those challenges. See *Lydon, supra* at 305. Key to the Court's decision in both cases was that "[t]he decision to secure a new trial rests with the accused alone." *Id.*, quoting *Ludwig, supra* at 631-632. The Court in *Lydon* held that, assuming jeopardy attached, the jeopardy was continuing because the defendant "fail[ed] to identify any stage of the state proceedings that can be held to have terminated jeopardy." *Lydon, supra* at 309.

Although we agree generally that the concept of continuing jeopardy is applicable here, we do not rest our decision on analogy to the trial de novo system.

intended to punish the defendant summarily but thought better of it on reflection. Our rules encourage such reflection.

We hold that, in the circumstances of this case, assuming, but not deciding, that the judge's comments on May 12 caused jeopardy to attach, the defendant was not "convicted" of summary contempt and therefore jeopardy did not terminate. There is no double jeopardy bar to nonsummary prosecution of the defendant for criminal contempt. The case is remanded to the county court for entry of a judgment denying the defendant's petition.

*So ordered.*